UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEBRA SMALLWOOD ON                    CIVIL ACTION
BEHALF OF T.M. AND HER
UNBORN CHILD, MINORS

VERSUS                                NO: 15-1887

NEW ORLEANS CITY, ET AL               SECTION: "J"(5)

<u>**ORDER & REASONS**</u>

Before the Court is a *Motion for Dismissal of Plaintiffs'*
*Amended Complaint* **(Rec. Doc. 31)** filed by Defendant Tyrone Casby
and an opposition thereto (Rec. Doc. 39) filed by Plaintiff.
Having considered the motion and legal memoranda, the record,
and the applicable law, the Court finds that the motion should
be **GRANTED**.

<u>**FACTS AND PROCEDURAL BACKGROUND**</u>

This litigation derives from the sexual assault of T.M., a
female minor, by J.M., a male minor, at the City of New Orleans
Youth Study Center ("YSC"), a secure care facility and school
for all youth adjudicated to be delinquent in the Parish of
Orleans. (Rec. Doc. 30, at 4-5.) On June 2, 2015, Debra
Smallwood, on behalf of T.M and T.M.'s unborn child, filed a

complaint against the City of New Orleans; Mayor Mitch Landrieu; Deputy Mayor Jerry Sneed; YSC; Glen Holt, the superintendent of YSC; Leroy Crawford, the assistant superintendent of YSC; Tyrone Casby, the principal of YSC; J.M.; and several unidentified parties. (Rec. Doc. 1.)

Plaintiff alleges that T.M. and her unborn child have suffered irreparable harm as a result of the Defendants' negligence, policies, practices, procedures, and customs. *Id.* at 5-6. Further, Plaintiff contends that Defendants' conduct in monitoring the YSC facility, failing to provide an adequate safety policy and procedure at YSC for students while in a classroom setting, and failing to address T.M.'s injuries has caused Plaintiff cruel and unusual punishment and constitutes deliberate indifference toward her safety and welfare. *Id.* at 6.

Tyrone Casby filed a motion to dismiss Plaintiff's complaint on August 17, 2015. (Rec. Doc. 12.) In his motion, Casby argued that Plaintiff's claims against him should be dismissed on the grounds of insufficient process, insufficient service of process, and failure to state a claim upon which relief may be granted. *Id.* at 1. On September 3, 2015, Plaintiff attempted to file a motion to amend the complaint and an opposition to Casby's motion to dismiss; however, these

documents were deficient.[1] Plaintiff corrected the deficiency and filed an opposition to Casby's motion on September 10, 2015. (Rec. Doc. 25.) At the same time, Plaintiff filed a motion to file an amended complaint. (Rec. Doc. 26.) The Court granted Plaintiff's motion to file an amended complaint, and the Amended Complaint was filed into the record on September 15, 2015. (Rec. Doc. 30.)

The Amended Complaint sets forth the following facts. On June 2, 2014, T.M., J.M., and one other male youth were present at YSC in the same classroom. *Id.* at 4. The only adult in the room was John Doe One, who was conducting the class. *Id.* at 5. T.M. requested and received permission to leave class to go to the restroom. *Id.* T.M proceeded directly to the restroom without an escort or monitor. *Id.* While T.M. was in the restroom, J.M. entered and forcibly raped her. Two weeks later, J.M. raped T.M. again in a similar series of events. *Id.* Two months later during a visit with a doctor, John Doe Two became suspicious that T.M. may be pregnant. *Id.* After the pregnancy was confirmed, John Doe Three and John Doe Four gave T.M. two white pills. *Id.* T.M.'s pregnancy subsequently terminated. *Id.* John Doe One, John Doe Two, John Doe Three, John Doe Four, John Doe Five, John Doe Six, and John Doe Seven failed to make a report to the police or the Louisiana Department of Children's Services despite the fact

---

[1] In addition, Casby filed a reply in support of his motion to dismiss wherein he responds to Plaintiff's deficient opposition. (Rec. Doc. 23.)

that they were allegedly informed of how T.M was raped and became pregnant. *Id.*

Plaintiff asserts a federal cause of action for deprivation of civil rights under 42 U.S.C. §§ 1981 and 1983. *Id.* at 1-2. In particular, Plaintiff claims that Defendants violated her right against cruel and unusual punishment, as guaranteed by the Eight Amendment of the United States Constitution. *Id.* In addition, Plaintiff asserts state law claims under the Louisiana Constitution of 1974, Louisiana Civil Code article 2315, and Louisiana Revised Statute section 9:2800.12, which makes it a civil wrong for a doctor to perform an abortion. *See id.* at 2. According to the Amended Complaint, Plaintiff's injuries were caused by the negligence, customs, policies, and practices of the City, through the YSC, including the following: "[f]ailure to properly repair/maintain premises, supervise and/or monitor facility; and failing to adequately provide treatment of injuries to T.M. and her unborn child." *Id.* at 6.

Casby filed the instant *Motion for Dismissal of Plaintiffs' Amended Complaint* **(Rec. Doc. 31)** on September 22, 2015. With leave granted from the Court, Plaintiff filed an opposition (Rec. Doc. 39) to the motion on October 2, 2015. Further, Plaintiff sought leave of Court to file a surreply in opposition to the motion on October 5, 2015. (Rec. Doc. 46.) Lastly, Casby

sought leave of Court to file a reply in support of his motion on October 6, 2015. (Rec. Doc. 52.)

## PARTIES' ARGUMENTS

Casby claims that Plaintiff's Amended Complaint fails to state a claim against him upon which relief can be granted.[2] (Rec. Doc. 31-1, at 4.) In support of his motion, Casby maintains that Plaintiff's claims should be dismissed for several reasons. First, Casby argues that Plaintiff's allegations are entirely conclusory and fail to separate Casby's knowledge and conduct from that of any other Defendants. *Id.* According to Casby, to state a federal civil rights claim against him, Plaintiff must allege that (1) Casby learned of facts or a pattern of inappropriate behavior pointing plainly toward the conclusion that T.M was being sexually abused; (2) Casby demonstrated deliberate indifference toward T.M.'s constitutional rights by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) Casby's failure to act caused a constitutional injury to

---

[2] Casby also argues that the Amended Complaint should be dismissed for insufficient process pursuant to Rule 12(b)(4) and insufficient service of process pursuant to Rule 12(b)(5). (Rec. Doc. 31-1, at 3-4.) On October 5, 2015, after Casby filed the instant motion, Plaintiff requested issuance of summons directed to Casby. (Rec. Doc. 41.) Summons was served upon Casby at his home that evening, along with the original Complaint and Amended Complaint. Plaintiff filed a return of service (Rec. Doc. 48) on October 6, 2015, which renders Casby's objections to the summons and service moot. Accordingly, the Court limits its focus to Casby's arguments for dismissal under Rule 12(b)(6).

Plaintiff. *Id.* (citing *Henry v. Toups*, No. 08-939, 2010 WL 3398857, at *8 (E.D. La. Aug. 23, 2010)).

Second, Casby argues that supervisory officials, like Casby, cannot be held liable under section 1983 for the acts of subordinates, like John Doe One, on any theory of vicarious liability. *Id.* at 4-5. Third, Casby contends that he cannot be held liable under section 1983 for his alleged failure to report T.M.'s abuse, even if Plaintiff alleges that he was a "Mandatory Reporter" under Louisiana law, because a failure to report child abuse does not constitute a "constitutional tort" and is not "action under color of law." *Id*. at 6. Lastly, Casby argues that Plaintiff has not presented sufficient allegations of actual notice or deliberate indifference to overcome the qualified immunity and statutory immunity he invokes as the school principal of YSC. *Id.* at 6-7. Furthermore, in support of his motion to dismiss Plaintiff's Amended Complaint, Casby adopts his previously-filed memorandum (Rec. Doc. 12-1) and reply (Rec. Doc. 23) in support of his motion to dismiss Plaintiff's original Complaint. (Rec. Doc. 31-1, at 1.)

In response, Plaintiff contends that the Amended Complaint sets forth sufficient allegations to show that Casby acted in violation of T.M.'s rights, and therefore Casby should not be dismissed from this litigation. (Rec. Doc. 39, at 3.) Because of Casby's position as principal and his direct knowledge of J.M.'s

criminal behavior, Plaintiff argues that Casby acted recklessly and with deliberate indifference toward T.M. by failing to have an adequate policy in place such that T.M. could go to the bathroom safely. *Id.* Moreover, Plaintiff distinguishes *Henry v. Toups*, the case relied on by Casby: "Unlike the perpetrator in Henry, [J.M] had been designated as a threat to society and was incarcerated."[3] *Id.* at 2. Further, Plaintiff argues that Casby was responsible for the youth along with John Doe One while the youth were in a classroom setting. *Id.* Plaintiff maintains that Casby knew of J.M.'s criminal propensities and had direct knowledge that J.M. was a known bully throughout YSC. *Id.* In addition, Plaintiff claims that Casby knew John Doe One was in a classroom setting with three youth, and it was reasonable to believe that the youth would have to go to the bathroom throughout the classroom period. *Id.* For this reason, Plaintiff argues Casby should have had an adequate policy in place in order for T.M. to go to the bathroom safely without being attacked. *Id.*

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[3] Plaintiff's brief actually states, "Unlike the perpetrator in Henry, *T.M.* had been designated a threat to society and was incarcerated." However, the Court assumes Plaintiff intended to write "J.M." rather than T.M., because J.M. is the alleged perpetrator in this case.

8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

<u>DISCUSSION</u>

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Qualified immunity is an affirmative defense that protects public officials sued for violations of constitutional rights. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For this reason, courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question

beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

When a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 476 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley*, 726 F.3d at 638 (quoting *al-Kidd*, 131 S. Ct. at 2080). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Supervisory officials, such as Casby, may invoke qualified immunity to shield themselves not only from personal liability for civil damages but also from suit itself. *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986). "It must be emphasized that qualified immunity is an *immunity from suit,* and extends beyond just a defense to liability to include all aspects of civil litigation." *Id.* Unless the plaintiff states a claim for violation of clearly established law, "a defendant pleading qualified immunity is entitled to dismissal before the

commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Courts must "carefully scrutinize a plaintiff's claim before subjecting public officials to the burdens of broad-reaching discovery." *Id.* Because of the strong public interest in protecting officials from the costs of litigation, it is imperative for a court to consider the issue of qualified immunity as early as possible and to "exercise its discretion in a way that protects the substance of the qualified immunity defense." *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998).

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Thus, in a section 1983 suit, "the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677.

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to

act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original) (quoting *Gates*, 537 F.3d at 435). The Fifth Circuit has established the following standard for this analysis. A supervisory official may be held personally liable for a subordinate's violation of the plaintiff's constitutional rights if the plaintiff establishes that:

> "(1) [the supervisory official] knew of a pattern of constitutional deprivations; (2) the [constitutional deprivation] was caused by a state actor over whom [the supervisory official] had supervisory authority or a state-law created right of legal control; (3) [the supervisory official's] failure to act demonstrated *deliberate indifference* to the victim's constitutional rights; and (4) [the supervisory official's] failure to act resulted in a constitutional injury."

*Whitley*, 726 F.3d at 640 (emphasis added); *accord Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994).

In the instant case, Plaintiff's section 1983 claim is predicated on Casby's alleged conduct in (1) failing to provide an adequate safety policy and procedure at YSC for students while in a classroom setting; (2) failing to ensure monitoring of the youth at YSC while in the classroom; (3) failing to properly train and supervise John Doe One; and (4) failing to adequately report T.M.'s abuse. Similar to supervisory liability, liability for failure to promulgate policy and

failure to train or supervise both require that Casby have acted with deliberate indifference. *Porter*, 659 F.3d at 446.

Deliberate indifference is an "extremely high" standard to meet. *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). Actions that are "merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). The state actor's actual knowledge is critical to the inquiry—a "failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An official is not liable for deliberate indifference "unless the official knows of and disregards an excessive risk to [the victim's] health or safety." *Brauner v. Coody*, 793 F.3d 493, 498 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

Here, Plaintiff fails to state a plausible section 1983 claim against Casby. First, the Amended Complaint contains no allegations that Casby had learned of facts or a pattern of constitutional deprivations caused by John Doe One. For example, in *Hagan v. Houston Independent School District*, the Fifth Circuit held that a principal did not have notice of facts pointing plainly to the conclusion that a coach was engaging in

sexual conduct with four students until he received the third student's complaint. 51 F.3d 48, 52 (5th Cir. 1995). In this case, Plaintiff does not allege that Casby received any complaints or notice about inadequate safety policies or T.M.'s abuse before Plaintiff filed this lawsuit for damages one year later.[4] Casby, like the principal in *Hagan*, could not have known about T.M.'s abuse until she complained about it. Accordingly, the Amended Complaint fails to show that Casby could have foreseen any problem.

The Amended Complaint also fails to allege facts capable of establishing that the actions or inactions of Casby of which Plaintiff complains were undertaken with deliberate indifference to T.M.'s constitutional rights. The test for deliberate indifference is not whether Casby did all he could or should have done, but whether he failed to take steps that were "obviously necessary" under the circumstances. *See Taylor*, 15 F.3d at 454. At this stage, Plaintiff must plausibly allege that Casby made a "'conscious' choice to endanger [T.M.'s] constitutional rights." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008). Although Plaintiff criticizes the security measures employed by Casby, "the mere 'haphazard' or 'negligent'

---

[4] Plaintiff alleges that "John Doe One, John Doe Two, John Doe Three, John Doe Four, John Doe Five, John Doe Six, and John Doe Seven [were] informed of how T.M. was raped and became pregnant." (Rec. Doc. 30, at 5.) Notably, Plaintiff does not allege that Casby was informed of a single instance of T.M.'s abuse, let alone a pattern of constitutional deprivations.

deployment of security measures does not establish deliberate indifference." *Whitley*, 726 F.3d at 642. For instance, the Fifth Circuit in *Hagan* dismissed the fourth student's section 1983 claim for failing to show deliberate indifference. 51 F.3d at 52. The court noted that overcoming qualified immunity is a "difficult task" for the plaintiffs, and it is not defeated if the supervisor's response was "ineffective to prevent" the constitutional harm. *Id.* Here, Plaintiff's allegation that Defendants' conduct in monitoring the facility and failing to address T.M.'s assault and her unborn child's injuries "constituted deliberate indifference" is conclusory and insufficient. At best, Plaintiff's allegations suggest that Casby was negligent in supervising and training John Doe One. Although the Court recognizes that the actions taken by Casby were ultimately ineffective, this is not enough to show that Casby acted in a manner that was deliberately indifferent to T.M.'s constitutional rights.

It is also unclear from the Amended Complaint whether Plaintiff alleges that Casby failed to report this matter. The Amended Complaint states, "John Doe One, John Doe Two, John Doe Three, John Doe Four, John Doe Five, John Doe Six, and John Doe Seven all having been informed of how T.M. was raped and became pregnant, failed to make a mandatory report to the police." (Rec. Doc. 30, at 5.) Further, Plaintiff alleges, "All

Defendants deemed to be first reporters by the Louisiana Code of Criminal Procedure failed to adequately report this matter as required by law." *Id.* at 7. Assuming, *arguendo*, that Plaintiff does allege that Casby failed to make a report, this alone is insufficient to allege Casby acted with deliberate indifference. Accordingly, Plaintiff's allegations fail to state a claim against Casby under section 1983 and certainly fail to state such a claim that would overcome Casby's assertion of qualified immunity.

Plaintiff further allege claims against Casby under Louisiana state and constitutional law. Louisiana applies qualified immunity principles to state constitutional law claims based on "[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983." *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (quoting *Moresi v. Dep't of Wildlife and Fisheries,* 567 So. 2d 1081, 1093 (La. 1990)). Inasmuch as Plaintiff's claims under state constitutional law parallel entirely the section 1983 allegations, Plaintiff fails to state a claim against Casby sufficient to overcome qualified immunity.

As to Plaintiff's state law claims, Casby also asserts statutory immunity under Louisiana law. Louisiana Revised Statute section 9:2798.1 grants immunity to public entities, as

well as their officers and employees, for discretionary acts performed within the course and scope of their official duties. *Jackson v. State ex rel. Dep't of Corr.*, 785 So. 2d 803, 809 (La. 2001). In addition, under Louisiana Revised Statute section 17:439, "no person shall have a cause of action against any school employee based on any statement made or action taken by the school employee provided that the action or statement was within the course and scope of the school employee's duties." La. Rev. Stat. § 17:439(A). The "statement made or action taken" language in section 17:439 "precludes a cause of action against school employees for both acts of commission and acts of omission committed . . . within the course and scope of their duties as defined by the school board." *Credit v. Richland Parish Sch. Bd.*, 85 So. 3d 669, 678 (La. 2012). However, the immunity from liability established by section 17:439 does not apply to an action that was "maliciously, willfully, and deliberately intended to cause bodily harm to a student." La. Rev. Stat. § 17:439(C).

Here, Casby is protected by Louisiana's statute providing qualified personal tort immunity for school employees. The Amended Complaint explicitly alleges, "At all times material throughout this complaint, each of the defendants was acting under color of state law, ordinance and/or regulation, and in the course and scope of their employment . . . ." (Rec. Doc. 30,

at 4.) The Amended Complaint fails to allege any facts sufficient to show that Casby "maliciously, willfully, and deliberately intended to cause bodily harm to a student." Thus, Casby is immune from liability.

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Tyrone Casby's *Motion for Dismissal of Plaintiffs' Amended Complaint* **(Rec. Doc. 31)** is **GRANTED**. Plaintiff's claims against Casby are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Leave to File a Surreply Memorandum in Opposition to Defendant's Motion to Dismiss* **(Rec. Doc. 46)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Tyrone Casby's *Motion for Leave to File Reply Memorandum in Support of Motion for Dismissal of Plaintiff's Amended Complaint* **(Rec. Doc. 52)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Tyrone Casby's *Motion for Dismissal* **(Rec. Doc. 12)** is **DENIED as moot**.

New Orleans, Louisiana this 13th day of October, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE