UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SMALLWOOD                              CIVIL ACTION

VERSUS                                 NO: 15-1887

NEW ORLEANS CITY ET AL.                SECTION: "J"(5)

<u>**ORDER & REASONS**</u>

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 66)** filed by the City of New Orleans ("City"); Mayor Mitchell Landrieu, individually and in his official capacity as the mayor for the City; Jerry Sneed, individually and in his official capacity as deputy mayor for the City; the Youth Study Center ("YSC"); Glen Holt, individually and in his official capacity as superintendent for the YSC; and Leroy Crawford, individually and in his official capacity as assistant superintendent for the YSC, (collectively, "Defendants"); an opposition thereto (Rec. Doc. 80) filed by Plaintiff, Debra Smallwood on behalf of her minor daughter T.M and T.M.'s unborn child; and a reply (Rec. Doc. 86) filed by Defendants.[1] Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

---

[1] Defendants note that Holt and Crawford do not file the reply in their individual capacity "as they have not been properly served." (Rec. Doc. 86, at 1. n.1.)

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from the sexual assault of T.M., a female minor, by J.M., a male minor, at the YSC, a secure care facility and school for all youth adjudicated to be delinquent in the Parish of Orleans. (Rec. Doc. 30, at 4-5.) On June 2, 2015, Debra Smallwood, on behalf of T.M and T.M.'s unborn child, filed a complaint against the City; Mayor Landrieu; Deputy Mayor Sneed; the YSC; Superintendent Holt; Assistant Superintendent Crawford; Tyrone Casby,[2] the principal of YSC; J.M.; and seven unidentified parties referred to as John Does One through Seven. (Rec. Doc. 1.)

Plaintiff claims that T.M. and her unborn child have suffered irreparable harm as a result of the Defendants' negligence, policies, practices, procedures, and customs. *Id.* at 5-6. Further, Plaintiff contends that Defendants' conduct in monitoring the YSC facility, failing to provide an adequate safety policy and procedure at YSC for students while in a classroom setting, and failing to address T.M.'s injuries has caused Plaintiff cruel and unusual punishment and constitutes deliberate indifference toward her safety and welfare. *Id.* at 6.

On September 15, 2015, the Court granted Plaintiff's motion to file an amended complaint, and the Amended Complaint (Rec. Doc.

---

[2] On October 13, 2015, this Court dismissed the claims asserted against Casby in the Amended Complaint on the grounds that Plaintiff failed to state a plausible claim against Casby upon which relief could be granted. (Rec. Doc. 60.)

30) was filed into the record. The Amended Complaint alleges the following facts. On June 2, 2014, T.M. and J.M. were present at the YSC in the same classroom, along with one other male youth. *Id.* at 4. The only adult in the room was John Doe One, the teacher conducting the class. *Id.* at 5. At some point during the class, T.M. requested and received permission from John Doe One to leave the classroom and go to the restroom. *Id.* T.M proceeded directly to the restroom without an escort or monitor. *Id.* After T.M. entered the restroom, J.M. entered the restroom and forcibly raped her. Two weeks later, J.M. raped T.M. again in a similar series of events. *Id.*

Two months after the second assault, T.M. visited with a doctor. *Id.* During the visit, John Doe Two became suspicious that T.M. may be pregnant. *Id.* After T.M.'s pregnancy was confirmed, John Doe Three and John Doe Four gave T.M. two "white pills." *Id.* T.M.'s pregnancy subsequently terminated. *Id.* Although John Doe One, John Doe Two, John Doe Three, John Doe Four, John Doe Five, John Doe Six, and John Doe Seven had been informed that T.M was raped and became pregnant, they failed to make a report to the police or the Louisiana Department of Children's Services, or take T.M. to the Children's Hospital Advocacy Center. *Id.*

Plaintiff asserts a federal cause of action for deprivation of civil rights under 42 U.S.C. §§ 1981 and 1983. *Id.* at 1-2. In particular, Plaintiff claims that Defendants violated her right

3

against cruel and unusual punishment, as guaranteed by the Eight Amendment of the United States Constitution. *Id.* In addition, Plaintiff asserts state law claims under the Louisiana Constitution of 1974, Louisiana Civil Code article 2315, and Louisiana Revised Statute section 9:2800.12, which makes it a civil wrong for a doctor to perform an abortion. *See id.* at 2. According to the Amended Complaint, Plaintiff's injuries were caused by the negligence, customs, policies, and practices of the City, through the YSC, including the following: "[f]ailure to properly repair/maintain premises, supervise and/or monitor facility; and failing to adequately provide treatment of injuries to T.M. and her unborn child." *Id.* at 6.

The Defendants filed the instant *Motion to Dismiss* **(Rec. Doc. 66)** on November 4, 2015. The motion was initially set for submission on December 2, 2015; however, upon Plaintiff's motion, the Court reset Defendants' motion to dismiss for submission on December 16, 2015. Plaintiff opposed the motion on December 8, 2015. Defendants filed their reply on December 16, 2015. The motion is before the Court on the briefs, without oral argument.

## PARTIES' ARGUMENTS

Defendants argue that Plaintiff failed to plead sufficient facts to demonstrate her entitlement to relief against Defendants and to effect proper service upon all Defendants as required by Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil

Procedure. (Rec. Doc. 66-1, at 2.) First, Defendants contend that Holt and Crawford have not been properly served with the lawsuit. *Id.* Defendants assert that neither Holt nor Crawford were served in compliance with Rule 4(e) because process was delivered to assistant superintendent Stephanie Mills at the YSC. *Id.* at 5.

Second, Defendants contend that Mayor Landrieu, Deputy Mayor Sneed, Holt, and Crawford are entitled to qualified immunity from the individual federal and state claims alleged against them because Plaintiff has failed to plead that any of them participated in a constitutional violation and acted in an objectively unreasonable manner. *Id.* at 2. Defendants claim that Plaintiff has failed to assert how the actions of Mayor Landrieu and Sneed directly contributed to the alleged violation of T.M.'s constitutional rights. *Id.* at 6. According to Defendants, Plaintiff merely recites boilerplate language and does not describe any actions allegedly taken by the Mayor or Sneed. *Id.* at 6-7, 9. Similarly, Defendants argue that Plaintiff fails to plead with particularity what role Holt and Crawford played in personally violating T.M.'s rights. *Id.* at 7, 9.

Third, Defendants contend that Plaintiff has not established the requisite pattern of constitutional violations needed to demonstrate that the YSC or City had a custom or policy that resulted in a violation of Plaintiff's constitutional rights. *Id.* at 2. Defendants claim that Plaintiff fails to allege any prior

acts by the YSC or City that demonstrate a widespread practice of negligently handling the deficiencies of the YSC or monitoring the facility. *Id.* at 11. Defendants argue that Plaintiff's claims rely on an isolated incident rather than the existence of a widespread practice. *Id,* In addition, Defendants argue that Plaintiff does not allege facts demonstrating a causal relationship between any policy or practice and the alleged injury. *Id.*

Fourth, Defendants contend that Plaintiff has failed to plead with specificity the requisite pattern of constitutional violations needed to demonstrate that the YSC or City is liable under a failure-to-supervise, failure-to-train, failure-to-provide-adequate-treatment, or failure-to-monitor theory. *Id.* at 2. Defendants maintain that Plaintiff does not point to a YSC or City policy or custom amounting to deliberate indifference. *Id.* at 11-13. According to Defendants, the only support for Plaintiff's failure-to-supervise or failure-to-train claim is Plaintiff's conclusory statement that Holt, Crawford, the City, or YSC should have provided better training of John Doe One, who is not identified as a City or YSC employee. *Id.* at 12. Similarly, Defendants argue that Plaintiff's allegations regarding the failure to provide adequate medical treatment by John Does One through Seven do not indicate who these individuals are and whether they are YSC or Orleans Parish School Board employees. *Id.* at 13. Further, Defendants assert that Plaintiff has not pointed to a

6

specific City or YSC employee, policy, or custom that would indicate a failure to monitor the YSC facility.

In opposition, Plaintiff argues that the Defendants are not entitled to qualified immunity; her claims against Defendants in their official capacity are viable; and Holt and Crawford were served in compliance with Rule 4(e) of the Federal Rules of Civil Procedure. (Rec. Doc. 80, at 4.) Plaintiff claims that she has alleged that the Mayor, Sneed, Holt, and Crawford have the responsibility to implement "sound policies and practices for housing inmates" and that "Defendants had a policy in place that permitted young men and women to go to the bathroom area without a guard present or any supervision or surveillance," which "exposed T.M. to being raped." *Id.* at 7-8. Further, Plaintiff claims she has alleged that "Defendants had a policy to require rape victims to have an abortion without consent of the minor or the minor's guardian," which "violated T.M.'s constitutional right." *Id.* at 7, 10. Furthermore, Plaintiff argues that she has pleaded sufficient facts to establish a causal connection between the Defendants and the actions of the seven John Does. *Id.* As such, Plaintiff contends that "there is sufficient causal connection between the Defendants' wrongful conduct and the constitutional violations." *Id.* In support of her claims, Plaintiff attaches two exhibits: the affidavit of T.M. (Rec. Doc. 80-1) and the affidavit of Debra Smallwood (Rec. Doc. 80-2).

Next, Plaintiff contends that the Defendants are not entitled to qualified immunity. In support of this argument, Plaintiff claims that the Court must accept as true her allegations that "due to the lack of adequate[] security, T.M. was incarcerated under conditions that posed a substantial risk of serious harm, that the [Defendants] had to know that this would be the case because men and women are not housed together in order to minimize the potential of rape, that they implemented a policy or custom that did not provide for adequate security, and, as a result, T.M. was raped several times." (Rec. Doc. 80, at 14.) Similarly, Plaintiff argues that the Court must accept as true her allegations that the Defendants "had to know" that the policy of having personnel induce abortions or "a policy that does not address the circumstances of pregnancy of the young women" violated T.M.'s constitutional rights. *Id.*

Lastly, Plaintiff contends that all Defendants have been sufficiently served with process. According to Plaintiff, "Defendants attempt to lead the court down a wild goose chase on the issues of service." *Id.* Plaintiff asserts that the Defendants were sued both in their individual and official capacities and, therefore, service at their place of employment was proper. *Id.*

In their reply, Defendants first contend that Plaintiff's opposition does not properly address the insufficient service of process issues related to the claims against Holt and Crawford in

their individual capacities. (Rec. Doc. 86, ay 1-3.) Next, Defendants contend that Plaintiff fails to establish that the Mayor, Sneed, Holt, and Crawford are not entitled to qualified immunity with respect to the claims against them in their individual capacities. *Id.* at 3-7. Defendants argue that Plaintiff has not alleged that the individual Defendants had notice of facts pointing plainly to the conclusion that the alleged constitutional violations were taking place or that they made an intentional choice to endanger T.M.'s constitutional rights. *Id.* at 6-7. According to Defendants, even if the bathroom arrangement amounted to negligence, the mere negligent deployment of security measures does not establish deliberate indifference. *Id.* at 7.

Further, Defendants contend that Plaintiff's official capacity claims and claims against the City and the YSC fail because Plaintiff cannot point to a custom or policy that directly resulted in a violation of Plaintiff's constitutional rights. *Id.* at 8-10. Defendants claim that Plaintiff asserts "only tenuous causal connections and conclusory allegations" and "does not even attempt to establish that a YSC or City policy was the moving force behind the alleged violation of T.M.'s constitutional rights. *Id.* at 9-10. Lastly, Defendants argue that Plaintiff's opposition includes new assertions that were not included in the Amended Complaint. *Id.* at 2, 4-5, 9. Moreover, Defendant asserts that "Plaintiff has also attempted to bolster the insufficient factual

allegations in the Amended Complaint by submitting affidavits."
*Id.* at 2. Defendant argues that affidavits are inadmissible as
evidence and contradict Plaintiff's allegations, and neither the
affidavits nor the additional allegations in the opposition can
cure the defects in the Amended Complaint. *Id.* at 2, 10.

**LEGAL STANDARD**

**A.   Rule 12(b)(5) Standard**

A motion to dismiss pursuant to Rule 12(b)(5) of the Federal
Rules of Civil Procedure challenges the mode of delivery or lack
of delivery of the summons and complaint. A 12(b)(5) motion turns
on the legal sufficiency of the service of process. Once the
validity of service of process has been contested, the plaintiff
bears the burden of establishing its validity. *Carimi v. Royal
Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).
A district court has broad discretion to dismiss an action pursuant
to Rule 12(b)(5) for insufficient service of process. *Kreimerman
v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

The procedural requirements for proper service are set forth
in Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4(e),
an individual may be served by following the procedural methods of
service of process provided by the state in which the district
court is located, *see* Fed. R. Civ. P. 4(e)(1), or by doing any of
the following: (A) "delivering a copy of the summons and of the
complaint to the individual personally"; (B) "leaving a copy of

10

each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (C) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Unless the document being served does not require an appearance or answer, Louisiana law requires domiciliary or personal service. La. Code Civ. Proc. arts. 1231, 1232, 1234, 1313.

Rule 4(m) gives a plaintiff 120 days to serve the defendants.[3] Under Rule 4(m), when a plaintiff fails to serve a defendant within the 120-day period, the court may "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If, however, the plaintiff shows good cause for the failure, the court must extend the time of service for an appropriate period. *Id.*

**B.   Rule 12(b)(6) Standard**

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura*

---

[3] Rule 4(m) was amended in 2015, and the time for effecting service on a defendant was reduced from 120 days to 90 days. The 2015 amendment took effect on December 1, 2015, after Plaintiff filed the Amended Complaint. Therefore, the Court applies the 120-day period in effect at the time the instant case was filed.

*Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

**A.   Insufficient Service of Process**

The Court must first determine whether service on YSC's assistant superintendent, Stephanie Mills, is sufficient for the claims against Holt and Crawford in their individual capacities. Plaintiff argues that service at Holt and Crawford's place of employment was proper because they were sued not only in their individual capacities but in their official capacities as well. The Court rejects this argument. Even if Plaintiff properly served Holt and Crawford in their official capacities, Holt and Crawford must still be served in their individual capacities. "[T]he fact that an individual state actor may be sued in his or her *official* capacity does not obviate the necessity for appropriate service of process for suit in a person's *individual* capacity." *Judeh v. Louisiana State Univ. Sys.*, No. 12-1758, 2013 WL 654921, at *3 (E.D. La. Feb. 20, 2013); *see also Robinson v. Turner*, 15 F.3d 82, 85 (7th Cir. 1994) ("Service upon an employee in his official capacity does not amount to service in his individual capacity.").

"To serve a [government] officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the [government's] behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the [government] and also serve the officer or

employee under Rule 4(e), (f), or (g)." *See* Fed. R. Civ. P. 4(i)(3).

Here, Plaintiff's service of Holt and Crawford by delivering process to their place of employment was ineffective because it did not comply with the provisions of Rule 4(e). Service of process was insufficient under Rule 4(e)(1) because "Louisiana law does not authorize service of an individual at the individual's workplace." *Jason v. Nugent*, No. 04-1722, 2005 WL 53301, at *2 (E.D. La. Jan. 7, 2005). Similarly, service of process here was insufficient under Rule 4(e)(2) because Plaintiff did not serve Holt and Crawford by personal or domiciliary service. Accordingly, Plaintiff's service on Holt and Crawford in their individual capacities was insufficient.

**B.  Failure to State a Claim**

Before addressing the claims in Plaintiff's Amended Complaint, the Court will first address the two affidavits attached to Plaintiff's opposition. Generally, in deciding a motion to dismiss for failure to state a claim, a court may consider only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may taker judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). It is

well known that when matters outside the pleadings are presented with a motion to dismiss under Rule 12(b)(6), "a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).

Here, Defendants assert that the affidavits attached to Plaintiff's opposition contain statements that constitute inadmissible hearsay or testimonial facts of which the affiants could not have personal knowledge. Further, Defendants request the Court not to consider the affidavits because they are an improper attempt to bolster the insufficient factual allegations in the Amended Complaint. The Court agrees. "[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. H-01-3624, 2003 WL 23316646, at *5 (S.D. Tex. Mar. 27, 2003). Accordingly, the Court exercises its discretion to exclude the matters presented outside the pleadings and will not convert Defendants' motion to dismiss to a motion for summary judgment.

Similarly, the Court will not consider additional information alleged in Plaintiff's opposition that has not been alleged in the

Amended Complaint.[4] "[A]dditional information put forth in [a plaintiff's response] cannot cure defects in the complaint itself." *Norwood v. Raytheon Co.*, No. EP-04-CA-127, 2006 WL 2833803, at *3 (W.D. Tex. Sept. 19, 2006); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("[E]ven where allegations are based on information and belief, the *complaint* must set forth a factual basis for such belief." (emphasis added)).

### 1.   Individual Capacity Claims

The Court must determine whether Plaintiff has alleged sufficient facts to state a plausible claim for relief against the Mayor, Sneed, Holt, and Crawford in their individual capacities.[5] Plaintiff asserts claims against the Defendants in their

---

[4] *Compare* Plaintiff's Opposition, Rec. Doc. 80, at 9 ("Defendants conspired to get rid of T.M.'s pregnancy by intentionally directing the dispensing of two white pills that forced her abortion in violation of T.M.'s rights to choose to procreate."), *with* Amended Complaint, Rec. Doc. 30, at 5 ("T.M. was later given two white pills by John Doe Three and Four, days later T.M. lost her baby."), *and id.* at 6 (alleging that Holt, Crawford, John Doe One, and the principal at YSC "failed to provide an adequate safety policy and procedure for trouble youth within a secure classroom environment"). Plaintiff uses her opposition to bolster other allegations in similar fashion. For example, Plaintiff's opposition alleges that "Defendants had a policy of permitting young men and young women to be in the area where the bathrooms were located without any guard or surveillance at the same time." (Rec. Doc. 80, at 10.) Although the Amended Complaint alleges that the YSC "failed to make adequate use of [surveillance] equipment in keeping track of all youth" in the facility, Plaintiff does not identify any specific policy regarding security for the restrooms. (Rec. Doc. 30, at 7.) In fact, the Amended Complaint does not even allege that John Doe One or any other employee at YSC ever gave J.M. permission to leave the classroom at the same time as T.M.

[5] The Amended Complaint specifically states that the Mayor is sued in his official and individual capacity. (Rec. Doc. 30, at 3.) However, the Amended Complaint does not specify whether Sneed, Holt, or Crawford are sued in their individual capacities. *See id.* at 3-4. For the purposes of their motion, Defendants assume that they were sued in their individual capacities. Likewise, the Court assumes that Defendants were sued in their individual capacities.

individual capacities for alleged violations of T.M.'s constitutional rights. Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

In order to assert a valid claim against an official in his individual capacity, "[a] Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'" *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James*, 535 F.3d at 373). This standard requires more than conclusory assertions. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct [and] facts giving rise to a constitutional violation." *Id.*

In a section 1983 suit, "the term 'supervisory liability' is a misnomer." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "Under

17

section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[6] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). A supervisory official may be held personally liable for a subordinate's violation of the plaintiff's constitutional rights if the plaintiff establishes that:

> "(1) [the supervisor] knew of a pattern of constitutional deprivations; (2) the [constitutional deprivation] was caused by a state actor over whom [the supervisor] had supervisory authority or a state-law created right of legal control; (3) [the supervisor's] failure to act demonstrated deliberate indifference to the victim's constitutional rights; and (4) [the supervisor's] failure to act resulted in a constitutional injury."

*Whitley*, 726 F.3d at 640; *accord Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994).

Importantly, in order to establish supervisor liability for constitutional violations committed by subordinate employees, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others'

---

[6] The Court will address allegations of unconstitutional policies under its discussion of official capacity and municipal liability claims.

constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original) (quoting *Gates*, 537 F.3d at 435). Deliberate indifference is an "extremely high" standard to meet. *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Actions that are "merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). The state actor's actual knowledge is critical to the inquiry—a "failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In addition, the Mayor, Sneed, Holt, and Crawford invoke the defense of qualified immunity. Qualified immunity is an affirmative defense that protects public officials sued for violations of constitutional rights. "The doctrine of qualified immunity protects government officials from civil damages

liability when their actions could reasonably have been believed to be legal." *Whitley*, 726 F.3d at 638 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For this reason, courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

When a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *Kitchen v. Dallas Cty.*, 759 F.3d 468, 476 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley*, 726 F.3d at 638 (quoting *al-Kidd*, 131 S. Ct. at 2080). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants may invoke qualified immunity to shield themselves not only from personal liability for civil damages but also from suit itself. *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.

1986). "It must be emphasized that qualified immunity is an *immunity from suit,* and extends beyond just a defense to liability to include all aspects of civil litigation." *Id.* Unless the plaintiff states a claim for violation of clearly established law, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Courts must "carefully scrutinize a plaintiff's claim before subjecting public officials to the burdens of broad-reaching discovery." *Id.* Because of the strong public interest in protecting officials from the costs of litigation, it is imperative for a court to consider the issue of qualified immunity as early as possible and to "exercise its discretion in a way that protects the substance of the qualified immunity defense." *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998).

In the instant case, Plaintiff has not alleged sufficient facts in the Amended Complaint to support claims against the Mayor, Sneed, Holt, or Crawford in their individual capacities. To the extent that the Amended Complaint asserts individual capacity claims against the Mayor and Sneed, such claims must be dismissed for failure to state a claim. The Amended Complaint contains no factual allegations that the Mayor or Sneed directly participated in the alleged deprivation of T.M.'s constitutional rights. Plaintiff alleges that the Mayor was a policymaker for the City

21

responsible for the policies, practices, and customs of the YSC. (Rec. Doc. 30, at 3.) With respect to Sneed, Plaintiff merely alleges that Sneed was "responsible to [the Mayor] for YSC." *Id.* The Amended Complaint does not describe any specific conduct or actions taken by the Mayor or Sneed causally connected to a constitutional violation. *See Jones*, 678 F.3d at 349; *Oliver*, 276 F.3d at 741. Accordingly, Plaintiff's claims against the Mayor and Sneed in their individual capacities must be dismissed.

Similarly, the Amended Complaint fails to state plausible claims against Holt and Crawford in their individual capacities. Plaintiff fails to allege any facts to show that Holt or Crawford were personally involved in the constitutional deprivation or that their wrongful actions were causally connected to the deprivation. *See Jones*, 678 F.3d at 349; *Oliver*, 276 F.3d at 741. Rather, the Plaintiff alleges that John Does One through Seven were personally involved in the deprivation. Moreover, the Amended Complaint sets forth vague and conclusory allegations that Holt and Crawford failed to properly supervise and train John Doe One, and failed to provide an adequate safety policy and procedure for monitoring the youth at the YSC. (Rec. Doc. 30, at 6-7.) There are no factual allegations in the Amended Complaint establishing a causal connection between Holt and Crawford and the actions of the seven John Does. For example, the Amended Complaint states "John Doe One, John Doe Two, John Doe Three, John Doe Four, John Doe Five,

John Doe Six and Joe Doe Seven all having been informed of how T.M was raped and became pregnant, failed to make a mandatory report to the police, the Louisiana Department of Children's Services or to take T.M. to the Children's Hospital Advocacy Center." *Id.* at 5. Plaintiff does not allege that Holt or Crawford knew about this incident and failed to report this matter. Plaintiff's individual capacity claims against Holt and Crawford must be dismissed.

In support of her individual capacity claims, Plaintiff cites *James v. Orleans Parish Prison*, No. 14-591, 2014 WL 3401155 (E.D. La. July 11, 2014). In *James*, the court determined that a pro se plaintiff's complaint stated a plausible claim against the parish sheriff in his individual capacity for alleged deprivation of the plaintiff's constitutional rights as a result of inadequate security at the jail. *Id.* at *2. The court found that the plaintiff's complaint sufficiently alleged that the sheriff had actual knowledge that the plaintiff was in danger "because the rampant violence within the Orleans Parish Prison system was both obvious and widely known." *Id.* at *3. However, the court dismissed the claim against the sheriff in his official capacity because the plaintiff did not allege that his constitutional rights were violated as a result of a policy or custom. *Id.* at *2.

The instant case is distinguishable from *James*. Plaintiff has not alleged that the Mayor, Sneed, Holt, or Crawford had actual knowledge that T.M. was in danger or had notice of any similar

23

incidents. Furthermore, in *James*, the dangerous conditions of the prison were alleged to be "longstanding, pervasive, well-documented [and] expressly noted" by the press. *Id.* at *3. On the contrary, here Plaintiff has not alleged any facts to show that the YSC is widely known for "rampant" and obvious constitutional violations. Accordingly, Plaintiff has failed to state cognizable claims against the Mayor, Sneed, Holt, and Crawford in their individual capacities.

###### 2. Official Capacity and Municipal Liability Claims

The Court must now determine whether the Amended Complaint contains sufficient factual allegations to state a plausible claim for relief against the Mayor, Sneed, Holt, and Crawford in their official capacities. A suit against a government official in his official capacity is treated as a suit against the entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978))). Accordingly, Plaintiff's claims against the Mayor, Sneed, Holt, and Crawford in their official capacities are analyzed under the same standard as Plaintiff's claims against the City and YSC.

It is well established that municipalities or other local governments may be liable under 42 U.S.C. § 1983. *Monell*, 436 U.S.

at 690. "But, under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "They are not vicariously liable under § 1983 for their employees' actions." *Id.* "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Municipal liability under § 1983 requires proof of "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Davis v. Tarrant Cty.*, 565 F.3d 214, 227 (5th Cir. 2009). The policymaker must have final policymaking authority. *Id.* Whether a particular official has final policymaking authority is a question of state law. *Id.*

An "official policy" for purposes of § 1983 liability is a "policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000). Alternatively, official policy is "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute

25

a custom that fairly represents municipal policy." *Id.* (alteration in original) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). Lastly, "[w]hen the person who committed the challenged act is in charge of policymaking in that part of the government, 'policy' can sometimes be found to have been established by the very act itself." *Hampton Co. Nat. Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 227 (5th Cir. 2008)

Municipal liability is based on causation conduct; it cannot be sustained under a theory of respondeat superior. *Davis*, 565 F.3d at 227. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (alteration in original) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Thus, a plaintiff must show that the municipality adopted a policy with "deliberate indifference" to its consequences and that the policy was the "moving force" behind the constitutional violation. *See Connick*, 563 U.S. at 61.

In the instant case, the Amended Complaint appears to allege *Monell* claims based on a failure to train or supervise, failure to monitor the YSC facility, failure to provide adequate treatment to T.M. and her unborn child, and general allegations of

unconstitutional policies and customs of the City and YSC. (Rec. Doc. 30, at 6-7.)

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To satisfy § 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* Deliberate indifference requires proof that a municipal actor "disregarded a known or obvious consequence of his action." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62.

Defendants argue that Plaintiff fails to state a *Monell* claim that is plausible on its face. The Court agrees. In her opposition, Plaintiff claims that she has alleged facts establishing the existence of an unconstitutional policy "of not having guards near the bathrooms while allowing both the young men and young women [to] use them at the same time." (Rec. Doc. 80, at 7.) In support of this assertion, Plaintiff directs the Court to "Paragraphs 3,

27

4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23 of the Original Complaint and Amended Complaints." *Id.* It is worth noting, however, that Plaintiff's original Complaint consists of only nineteen numbered paragraphs, ending with Paragraph 13,[7] (Rec. Doc. 1, at 7), and Plaintiff's Amended Complaint consists of only twenty-one numbered paragraphs, ending with Paragraph 21, (Rec. Doc. 30, at 8). Because the two complaints are numbered differently and neither includes a Paragraph 22 or 23, it is unclear what Plaintiff is referring to in her opposition.

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993). Rather, the plaintiff must identify a policy or custom that caused the alleged constitutional deprivation. *See Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997). In the instant case, the Amended Complaint does not identify or adequately describe such a policy or custom.

Not only does Plaintiff fail to identify in the Amended Complaint an official policy or custom, she falls well short of

---

[7] The paragraphs in Plaintiff's original Complaint are numbered incorrectly. The first twelve numbered paragraphs are numbered 1-12, but the remaining seven paragraphs are numbered 7-13.

alleging that the City or YSC adopted a policy or participated in a widespread practice with deliberate indifference to its consequences. Plaintiff has not alleged a pattern of similar constitutional violations by untrained employees. The Amended Complaint alleges that T.M. was raped on two occasions, and does not allege that any of the Defendants had knowledge of the assaults. Thus, the two incidents could not have put the policymakers of the City or YSC on notice that their employees' training was inadequate with respect to procedures for handling students in a classroom setting. Plaintiff also fails to allege causation, i.e., that the City's policy or custom was the "moving force" behind a violation of constitutional rights.

Plaintiff appears to rely on the "single-incident" liability that the Supreme Court hypothesized in *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). In *Canton*, the Court left open the possibility that in a narrow range of circumstances, "the need for more or different training [can be] so obvious, and the inadequacy [of training] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need [for training]." *Id.* The Court posed the hypothetical example of a city that arms its police officers with firearms and deploys the armed officers to arrest fleeing felons without training the officers in the constitutional limitation on the use of deadly

force. *Id.* at 390 n.10. In sum, the Court "sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

However, failure to train employees to prevent multiple youths from leaving the classroom at the same time does not fall within the narrow range of *Canton*'s hypothesized single-incident liability. Armed police must sometimes make split-second decisions with life-or-death consequences. *Id.* at 64. Therefore, violations of constitutional rights are a "highly predictable consequence" of a city's decision not to train its officers on the use of deadly force. *Id.* However, the obvious need for specific training that was present in the *Canton* scenario is not present here. It cannot be said that sexual assault is a "highly predictable consequence" of the City's alleged decision not to train its employees on the procedures for monitoring the youth at the YSC. *Cf. id.* (holding that city's failure to train prosecutors in their *Brady* obligations does not fall within the narrow range of circumstances hypothesized for single-incident liability).

Plaintiffs has simply failed to plead sufficient facts that, accepted as true, would state a claim for municipal liability that is plausible on its face. "Stripped of its conclusory allegations and the technical buzz words liberally sprinkled throughout,

[Plaintiff's] pleadings allege, at best, a negligence action." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Accordingly, Plaintiff has failed to state plausible claims for municipal liability against the City or YSC. Likewise, Plaintiff has failed to state plausible claims against the Mayor, Sneed, Holt, and Crawford in their official capacities.

## C.   Remaining Claims

Plaintiff has asserted various state law claims in conjunction with her § 1983 claims. The Court has original jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331 and discretionary supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Section 1367(c)(3), provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed. *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). When a court dismisses all federal claims before trial, the general rule in the Fifth Circuit is to dismiss any pendent state claims as well. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)). However, the dismissal of the pendent claims should

31

expressly be without prejudice so that the plaintiff may refile the claims in the appropriate state court. *Id.* Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss* **(Rec. Doc. 66)** is **GRANTED**. Plaintiff's federal claims against Mitchell Landrieu, Jerry Sneed, Glen Holt, Leroy Crawford, the City of New Orleans, and the Youth Study Center are **DISMISSED with prejudice**. Plaintiff's pendent state claims are **DISMISSED without prejudice** to being refiled in the appropriate state court.

New Orleans, Louisiana, this 4th day of January, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE